IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF NEW YORK

---

BETHPAGE WATER DISTRICT,

        Plaintiff,

vs.

NORTHROP GRUMMAN CORPORATION, and
NORTHROP GRUMMAN SYSTEMS
CORPORATION

        Defendants.

---

Index No.:

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Bethpage Water District ("BWD"), by its attorneys, Weitz & Luxenberg, P.C., hereby alleges as follows, based on information and belief and investigation of counsel:

## I. NATURE OF THE CASE

1. Plaintiff Bethpage Water District ("BWD") brings this action against Defendants to forestall a water quality emergency and attendant irreparable harm created by contamination of soil and groundwater in Bethpage, New York.

2. Defendants owned and/or operated facilities on approximately 600 acres in east-central Nassau County, formerly known as the Grumman Aerospace-Bethpage Facility Site, and including the Northrop Grumman – Bethpage Facility, the Naval Weapons Industrial Reserve Plant – Bethpage ("NWIRP"), and the Grumman Steel Los Site (collectively "the Site"), from which hazardous substances were released which are now contaminating and/or threatening to contaminate Plaintiff's public water supply wells.

3. BWD owns and/or operates public drinking water systems and supplies drinking water to thousands of residents and businesses in Bethpage, New York. Toxic chemicals that are known to date, including but not limited to volatile organic compounds (VOCs), such as trichloroethylene (TCE) and its breakdown products, radium-226 and radium-228, and

ORIGINAL COMPLAINT FOR DAMAGES AND OTHER RELIEF

perchlorate (collectively, "contaminants"), have been and are contaminating the aquifer which supplies Plaintiff's drinking water wells.

4. Plaintiff commences this action to recover compensatory and all other damages including, but not limited to, all necessary funds to reimburse Plaintiff for the costs of monitoring for contaminants, the costs of operating, maintaining and upgrading the treatment facilities and equipment required to comply with state and federal safe drinking water laws and to remove contaminants from the drinking water it supplies to the public and/or for the costs of securing alternative sources of water as a result of the contamination, and to ensure that the responsible parties bear such expense, rather than BWD and its customers and ratepayers.

5. In this action, Plaintiff asserts claims for: (a) public and/or private nuisance; (b) trespass; and (c) negligence.

## II. PARTIES

6. Plaintiff BWD is a supplier of public water, located at 25 Adams Avenue in Bethpage, New York.

7. BWD is the current owner and operator of multiple Well Sites, which plaintiff uses to provide drinking water to residents of Bethpage and surrounding towns, and which are threatened and/or contaminated by the release of contaminants by Defendant.

8. Defendant Northrop Grumman Corporation ("NGC" or "Defendant") is a Delaware corporation with its principal place of business at 2980 Fairview Park Drive, in Falls Church, Virginia. Upon information and belief, NGC is a successor in interest to Grumman Corporation.

9. Defendant Northrop Grumman Systems Corporation ("NGSC" or "Defendant"), formerly known as Northrop Grumman Corporation, is a Delaware corporation headquartered in

Falls Church, Virginia. Upon information and belief, NGSC is a subsidiary of NGC, and is a successor in interest to Grumman Aerospace Corporation, which was headquartered in Bethpage, New York and incorporated under the laws of the State of New York.

10. NGC and/or NGSC or their predecessors owned and/or operated the Site at the time of the disposal and/or release of hazardous and toxic substances.

11. When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

12. The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

### III.  JURISDICTION & VENUE

13. Plaintiff BWD is a resident of New York.

14. Based upon information and belief, Defendant transacts business within the state of New York, or contracts anywhere to supply goods or services in New York.

15. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of $75,000 and is between the citizens of different states.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the events giving rise to the claim and the property that is the subject of the action occurred and is situated in Bethpage, Nassau County, New York, within the Eastern District of New York.

## IV. GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

*The Bethpage Water District*

17. In operation since 1923, the BWD serves drinking water to the residents of Bethpage and surrounding communities.

18. BWD obtains all of its water from the Long Island Aquifer System, designated by the United States Environmental Protection Agency ("EPA") as one of the first "sole source" aquifers in the country under the Safe Drinking Water Act, 42 U.S.C. § 300h-3(e) in 1975. A "sole source" aquifer is "an aquifer which is the sole or principal drinking water source for the area and which, if contaminated, would create a significant hazard to public health." The EPA observed that "[s]ince contamination of a ground-water aquifer can be difficult or impossible to reverse, contamination of the aquifer system underlying Nassau and Suffolk Counties, New York, would pose a significant hazard to those people dependent on the aquifer system for drinking purposes."

19. Plaintiff BWD thus obtains all of its water from underground wells. It operates and manages a groundwater supply system that includes 8 wells on 5 pumping sites, and serves the areas of Bethpage, Old Bethpage, Plainview, Farmingdale, and Levittown.

20. Plant 4 (also called "Well Site 4) is located on Sophia Street, and is made up of two wells: Well # 4-1 and Well # 4-2. Each well has a pumping capacity of 1,400 gallons per minute and is treated by air-stripping and Granular Activated Carbon ("GAC") for VOC removal.

21. Plant 5 (also called "Well Site 5") is located on Broadway at Wilson Lane, and has one well: Well # 5-1. Well # 5-1 has a pumping capacity of 1,400 gallons per minute and is treated by air-stripping for VOC removal.

22. Plant 6 (also called "Well Site 6") is located on Park Lane at Lowell Street, and is made up of two wells: Well # 6-1 and Well # 6-2. Each of these wells also has a pumping capacity of 1,400 gallons per minute and is treated by air-stripping and GAC for VOC removal.

23. Plant 1 is located at 25 Adams Avenue, and is made up of two wells: Well # 7A and Well # 8A. Each of these wells has a pumping capacity of 1,400 gallons per minute and is treated with GAC for VOC removal and ion exchange for Perchlorate and Nitrate removal.

24. Plant "BGD" is located on Plainview Road and is made up of one well: Well # BGD-1. This well has a pumping capacity of 1,400 gallons per minute and is treated by ion exchange for Perchlorate removal.

25. Plaintiff also is currently installing a new Well Site on South Park Drive (the "South Park Drive Well"). This well will have a pumping capacity of 2,000 gallons per minute.

*Northrup Grumman Corporation*

26. Defendant began operations at the Site in Bethpage, New York in the 1930s.

27. Throughout its operations, Defendant disposed of various hazardous wastes from industrial processes directly into the environment. These wastes included VOCs, such as Trichloroethylene (TCE). Upon information and belief, Defendant's operations also would have included radioactive materials, including radium, and perchlorate.

28. From approximately 1949 through 1962, Defendant utilized the "Former Grumman Settling Ponds" area to dispose of sludge, including neutralized chromic acid waste, from the waste water treatment facility which was located within the Grumman Aerospace Bethpage complex.

29. In October of 1962, Grumman Aircraft Engineering Corporation donated approximately 18 acres of its land near the intersection of Stewart Avenue and Cherry Avenue,

ORIGINAL COMPLAINT FOR DAMAGES AND OTHER RELIEF

in Bethpage, New York, to the Town of Oyster Bay. This land is now known as the Bethpage Community Park ("the Park").

30. Within the Park, a ball field area was built over the location of the Former Grumman Settling Ponds.

31. NGSC still owns the Grumman Access Road, a closed private road in the vicinity of the Park associated with the former plant.

32. All manufacturing at the Site ceased in approximately 1996.

33. Wastewater treatment sludge generated at the Grumman Aircraft Engineering Corporation Plant 2 Industrial Wastewater Treatment Facility ("Plant 2") was transported to the Park property and placed in one of two sludge drying beds.

34. The area where the sludge drying beds were located was enclosed by a chain-link fence, which was secured by a locked gate. This fenced area is visible in available aerial photographs dated between the 1950s and 1962, when the property was transferred to the Town of Oyster Bay.

35. Spent rags generated during the wipe-down of a paint booth water curtain located in Plant 2 were transported to the fenced-in area of the Park property where they were emptied into a pit located on the property. In addition, used oil may have been discarded in the pit. Upon information and belief, these actions caused or contributed to the current VOC groundwater contamination plumes.

36. The southeastern portion of the current park property was utilized as a fire training area where waste oil and jet fuel were ignited and extinguished. Upon information and belief, these actions caused or contributed to the current perchlorate groundwater contamination.

ORIGINAL COMPLAINT FOR DAMAGES AND OTHER RELIEF

*Historical Contamination of the Grumman Site and BWD's Wells*

37. Grumman first discovered that some of its wells were contaminated in the early 1960s, when Grumman employees noticed an unusual taste and odor coming from the water faucets on the Site.

38. An investigation of the water wells on the Site revealed that they were heavily contaminated with TCE, and after 1976, were no longer used for human consumption. The on Site wells remained in use, however, for industrial purposes.

39. In 1983, the Grumman Aerospace-Bethpage Facility Site was listed in the Registry of Inactive Hazardous Waste Disposal Sites in New York State.

40. In 1989, Northrop Grumman signed a Remedial Investigation/Feasibility Study ("RI/FS") Order on Consent for Operable Unit 1 ("OU1") and Operable Unit 2 ("OU2"). OU1 encompasses the former manufacturing plant area. OU2 consists of the groundwater contamination plume.

41. On March 9, 1992, Northrop Grumman signed an Order on Consent with the State of New York to perform a remedial investigation and feasibility study (RI/FS) at the Site.

42. BWD and Grumman Aerospace Corporation, a predecessor of Defendant, entered into an agreement concerning contamination at Well Site # 4 on June 17, 1994 ("Well Site # 4 Agreement").

43. The Well Site #4 Agreement specified that it covered only "the type, level and location of the contaminants that exist at Well Site No. 4 as currently revealed in the remedial studies referred to [in the Agreement]."

ORIGINAL COMPLAINT FOR DAMAGES AND OTHER RELIEF

44. In March and July of 1995, New York State executed Records of Decision (RODs) for the Northrop Grumman and NWIRP Sites concerning on-site soil contamination in OU1.

45. In March of 2001, the New York Department of Environmental Conservation ("DEC") issued a Record of Decision ("ROD") for OU2, which provided for wellhead treatment at impacted public water supply wells, boundary monitoring of the plume, and the contingency for additional wellhead treatment should other wells be affected.

46. In July of 2005, Northrop Grumman Systems signed a RI/FS Order on Consent for the Former Grumman Settling Ponds, Adjacent Areas of the Bethpage Community Park, and the Grumman Access Road, collectively known as Operable Unit 3 (OU3).

47. In late 2009, BWD discovered a VOC contamination plume upgradient from, and threatening to impact, Plant No. 4. The magnitude of VOCs detected in the aquifer upgradient of Plant No. 4 had the ability to cause reduction of capacity or total loss of the Plant No. 4 facility unless prompt action was taken to provide an emergency interim wellhead treatment system.

48. This plume contained a "hot spot" of TCE in the groundwater flowing toward BWD's well sites with total VOC concentrations exceeding 10,000 ug/L. This plume was not revealed in any remedial studies performed prior to executing the Well Site # 4 Agreement.

49. Plant No. 4 is critical to BWD in meeting the demands of its customers. The loss of the wells at Plant No. 4 would directly impact public health by adversely impacting BWD's ability to meet peak and emergency pumping requirements.

50. Thus, to address this "hot spot" of contamination, BWD has made upgrades to its existing treatment technologies, including, but not limited to, additional air-stripping technology

ORIGINAL COMPLAINT FOR DAMAGES AND OTHER RELIEF

installed at Well # 4-2, and a granular activated carbon (GAC) polishing system. These upgrades have resulted in various additional expenses incurred by BWD.

51.  In January of 2013, testing of well water in Well 4-1 detected radium at 5.87 picocuries per liter (pCi/L).

52.  State and Federal standards for radium in drinking water are a Maximum Contaminant Level (MCL) of 5 pCi/L based on an average of quarterly water tests, and a Maximum Contaminant Level Goal (MCLG) of zero.

53.  Since January of 2013 BWD removed well 4-1 from production, and has continued to monitor the wells of Well Site # 4 for radium from January of 2013 through the present.

54.  On July 2, 2013, BWD announced its plans to drill a new well, the South Park Drive Well, approximately two miles away from any of its current Well Sites. This new well is expected to pump up to three million gallons of water per day, and is expected to cost BWD approximately $3.5 million. Experts agree that distributing water from this new well is expected to be more cost effective than continuing to use treated water from the existing wells.

### FIRST CAUSE OF ACTION – PRIVATE and/or PUBLIC NUISANCE

55.  Plaintiff realleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

56.  Plaintiff is the owner of land, easements and water rights which permit it to extract groundwater for use in Plaintiff's Wells.

57.  The negligent, reckless, and/or intentional activity of the Defendant, as alleged herein, has resulted in the contamination of Plaintiff's Wells and the groundwater that supplies them, giving rise to special damage to Plaintiff.

ORIGINAL COMPLAINT FOR DAMAGES AND OTHER RELIEF

58. The negligent, reckless, and/or intentional activity of the Defendant, as alleged herein, accordingly, has interfered with Plaintiff's rights and property interests and its use and enjoyment of those rights and interests.

59. The negligent, reckless, and/or intentional activity of the Defendant, as alleged herein, has resulted in the contamination of the groundwater aquifer that supplies Plaintiff's wells, groundwater, drinking water supplies, and other waters.

60. The nuisance conditions caused, contributed to, maintained, assisted and/or participated in by the Defendants have caused substantial injury to Plaintiff's Wells and the groundwater that supply them, in which Plaintiff has a significant property interest.

61. The nuisance conditions caused, contributed to, maintained, assisted and/or participated in by the Defendants have substantially and unreasonably interfered with, obstructed and/or disturbed Plaintiff's rights to appropriate, use and enjoy groundwater from Plaintiff's Wells and continue to substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's rights to appropriate, use and enjoy groundwater from Plaintiff's Wells.

62. This contamination also interferes with the right of the community to safe drinking water.

63. Plaintiff is specially and adversely affected by the nuisance conditions alleged herein.

64. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Wells and the groundwater that supply them have been contaminated, causing Plaintiff significant injury and damage. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur,

investigation, treatment, remediation and monitoring costs and expenses related to the contamination of its Wells in an amount to be proved at trial.

65. For the reasons set forth and specifically alleged in the Complaint, Plaintiff is entitled to an award of punitive damages that is sufficient to punish Defendants and that fairly reflects the aggravating circumstances alleged herein.

## SECOND CAUSE OF ACTION - TRESPASS

66. Plaintiff realleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

67. Plaintiff is the owner and actual possessor of Plaintiff's Wells.

68. Plaintiff owns, possesses and actively exercises its rights to appropriate and use groundwater drawn from its Wells described in the preceding paragraph, including those of Plaintiff's Wells that are contaminated.

69. Defendants negligently, recklessly and/or intentionally failed to properly control, apply, use and/or dispose of contaminants, such that Defendants proximately caused contaminants to enter, invade, intrude upon and injure Plaintiff's possession of property. Defendants engaged in affirmative conduct that caused, contributed to, maintained and/or assisted in the creation of the trespass alleged herein, as follows: Defendants knew, or should have known, that contaminants, including VOCs, such as TCE and others, radium, and perchlorate were persistent, and could contaminate soil and groundwater.

70. Plaintiff has not consented to, and does not consent to, the contamination alleged herein. Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass.

ORIGINAL COMPLAINT FOR DAMAGES AND OTHER RELIEF

71. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Wells and the groundwater that supplies them have been contaminated, causing Plaintiff significant injury and damage. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the contamination of its Wells in an amount to be proved at trial.

72. For the reasons set forth and specifically alleged above, Plaintiff is entitled to an award of punitive damages against Defendants that is sufficient to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

### THIRD CAUSE OF ACTION - NEGLIGENCE

73. Plaintiff realleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

74. Defendants had a duty to use due care in the handling, control, use, and disposal of contaminants, including toxic and hazardous materials such as VOCs, radium, and perchlorate on its Site, and to prevent, and to the extent feasible, eliminate contamination of Plaintiff's Wells and groundwater supplying those Wells with contaminants in concentrations which may pose adverse health effects.

75. Defendants so negligently, carelessly, and recklessly handled, controlled, and disposed of contaminants on its Site that they directly and proximately caused contamination of Plaintiff's Wells and groundwater supplying those Wells.

76. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Wells and the groundwater that supplies them have been, and continue to be, contaminated, causing Plaintiff significant injury and damage.

ORIGINAL COMPLAINT FOR DAMAGES AND OTHER RELIEF

77. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the contamination of its Wells in an amount to be proved at trial.

78. For the reasons set forth and specifically alleged above, Defendants acted maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Plaintiff. Plaintiff is entitled to an award of punitive damages against Defendants that is sufficient to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a trial of this Action before a jury, and that, upon a favorable verdict, this Court enter judgment in favor of Plaintiff and against Defendants, awarding Plaintiff:

    a. Compensatory damages according to proof;

    b. costs of litigation;

    c. prejudgment interest; and

    d. such other and further relief as the Court may deem just and proper.

DATED: November 18, 2013

By: *(signature)*
Robin L. Greenwald, Esq.
Curt D. Marshall, Esq.
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: 212-558-5505
Facsimile: 212-344-5461
*Attorneys for Plaintiff*

ORIGINAL COMPLAINT FOR DAMAGES AND OTHER RELIEF